United States District Court
Southern District of Texas
**ENTERED**
September 30, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTINA LITTELL, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-03369 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, | § § § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Houston Independent School District's ("HISD") Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"). Doc. 13. Having considered the motion, the response, the facts in the record, and the applicable law, the Court grants the motion and denies Plaintiffs' request for additional time to re-plead.

**I.      Background**

Plaintiffs allege that their twelve-year-old daughters, I.L. and A.B., were subjected to an illegal strip search by a school nurse at Lanier Middle School in Houston, Texas on December 3, 2012. Doc. 12 at ¶ 27. According to Plaintiffs, when another student's money went missing during I.L. and A.B.'s choir class—and after an initial search of the students' belongings failed to reveal the missing money—the girls were led to a private bathroom where they were strip searched by the school nurse on Administrator Verlinda Higgins's ("Higgins") orders. *Id.* at 14–17. During this search, the girls were checked around the waistband of their panties and under their shirts. *Id*. at ¶ 19. They also had to loosen their bras and lift their shirts, which exposed them from the shoulder to the waist. *Id*. In total, twenty-two young girls were strip searched that day. *Id*. at ¶ 20.

Plaintiffs allege that this search was conducted in accordance with official HISD custom or policy with respect to student searches. *Id*. at ¶ 28. In their First Amended Complaint, Plaintiffs specifically state that "HISD has had a policy of student searches in effect for approximately [fifteen] years." *Id*. at ¶ 7. Plaintiffs attach multiple documents outlining this policy to the First Amended Complaint. Docs. 12-1–3. One of these, the 2012–2013 Code of Student Conduct, states: "Students are entitled to the guarantees of the Fourth Amendment of the U.S. Constitution, and they are subject to reasonable searches and seizures." Doc. 12 at ¶ 9 (quoting Doc. 12-2 at 3). In providing guidance on what that means, the Code further explains: "School officials are empowered to conduct reasonable searches of students and school property when there is reasonable cause to believe that students may be in possession of drugs, weapons, alcohol, or other materials ("contraband") in violation of school policy or state law." *Id*. Plaintiffs argue that Higgins violated this policy because she had no reasonable cause to believe that any of the students were in possession of contraband at the time of the search in this case, making this search unjustified at its inception. Doc 12 at ¶ 21.

Plaintiffs also attach documents outlining instructions to HISD employees with respect to the appropriate procedure to conduct a search of a student's person. Doc. 12-1 at 10. These instructions explain that:

> The student should ordinarily be required to be present and asked to consent to the search. If after being informed of the basis for the school official's reason to conduct a search, the student does not consent and the circumstances permit, the student's parent or guardian should be called and informed of the circumstances. If the parent or guardian will not consent to the search, the school official may proceed with the search, contact the HISD Police Department, or if necessary call law enforcement authorities. Ordinarily, and if circumstances permit, the search of a person or his or her effects should be conducted out of the presence of other students.

*Id*.[1] Plaintiffs complain that in contravention of these instructions, no other adults were present during the search and that the girls' parents were not notified even though several of the girls stated that they did not want to participate in the search and asked that their parents be called. *Id*. at ¶ 18. In particular, A.B. allegedly asked to call her mother but was denied. *Id*. According to Plaintiffs, HISD has no other stated procedures on how to conduct the search of a student's person. *Id*. at ¶ 24.

Despite the existence of a student-search policy and instructions, Plaintiffs allege that HISD employees receive no training on what a reasonable search is or on how to properly conduct a search. Doc. 12 at ¶ 11. According to Plaintiffs, "[i]t is this lack of training, coupled with vague, undefined policies that facilitated the unreasonable strip search of twenty-two children at Lanier Middle School on December 3, 2012." *Id*. In support of their contention that HISD actual practice and official policy are inconsistent, Plaintiffs allege that Higgins was issued a "Directive to Follow Policies and Procedures," *Id*. at ¶ 22, which they attach to the First Amended Complaint. Doc. 12-3 at 1. This directive was issued on December 6, 2012, three days after the incident in question. *See id*. Pursuant to this directive, Plaintiffs argue that Higgins was specifically instructed to visit Page 4 of the School District's Student Code of Conduct for "policy and procedures concerning school officials and reasonable search of students." Doc. 12 at ¶ 22. Higgins was further instructed to notify the Principal, Linda Smith, before proceeding with any future searches and if the Principal was not available, to contact the Middle School Office for permission to proceed. *Id*. According to Plaintiffs, these instructions conflict with the district's stated search policy. *Id.* at ¶ 23.

Finally, Plaintiffs allege that, because the strip search caused a substantial invasion of

---

[1] Notably, these instructions also define terms such as "reasonable cause" and "contraband." Doc. 12-1 at 9.

their privacy, personal security, and dignity, I.L. and A.B. suffered and continue to suffer significant emotional harm, embarrassment, stress, pain, and suffering. *Id*. at ¶ 25. As a result, Plaintiffs seek compensatory damages for pain, suffering, emotional distress, and embarrassment under 42 U.S.C. § 1983 and Article I, § 9 of the Texas Constitution. *Id.* at ¶ 36.

On February 2, 2015, Defendant filed its first motion to dismiss in this case. Doc. 5. In an Opinion and Order dated September 30, 2015, this Court granted Defendant's motion because Plaintiffs failed to explain how HISD's policy facilitated unreasonable searches and omitted facts relating to HISD's actual training program describing what training HISD provided or failed to provide, whether in the form of standard operating procedures or longstanding practices. Doc. 11 at 6. Plaintiffs were granted twenty days from the date of entry of the Opinion and Order to file an amended complaint. *Id*. at 7. Plaintiffs were also instructed to allege facts that, if proved true, would establish that HISD's deliberate indifference to the failure to train school employees in the Fourth Amendment rights of the students in their care actually caused the violations of those Fourth Amendment rights. *Id*. at 6. Furthermore, this Court granted Defendant's motion to dismiss the Original Complaint as to Plaintiffs' Art. I, § 9 Texas constitutional claim because Plaintiffs did not allege facts for which injunctive relief would be proper. *Id*. at 7. Plaintiffs also had twenty days to cure this deficiency by stating a claim for injunctive relief. *Id*.

II.     **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual matter is limited to "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,

336 F.3d 375, 379 (5th Cir. 2003). Under Fed. R. Civ. P. 15(a), a party is allowed to amend its pleadings once as a matter of course.

III. Discussion

In its Motion to Dismiss, Defendant argues the case should be dismissed because Plaintiffs again fail to allege facts that would show that any injuries to them, as a result of the search at issue, were caused by any custom, policy, or practice of the District, and have not stated a proper claim for injunctive relief against HISD under the Texas Constitution. Doc. 13. Plaintiffs respond that their First Amended Petition adequately explains how the HISD policy facilitated unreasonable searches, alleges sufficient facts to demonstrate conscious indifference on the part of HISD to the rights of their students, and alleges facts for which injunctive relief would be proper. Doc. 17 at 5.

A. 42 U.S.C. § 1983

The Supreme Court has made it clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, "to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself," municipal liability under § 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694 (1978)). The HISD Board of Trustees is the "one and only policymaker for HISD." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003). An "official policy" is:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted or promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam). Accordingly, to state a claim against HISD, Plaintiffs must allege facts showing that the school district's "final policymaker"—the school board—actually adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a permanent and deeply imbedded, abusive, and unconstitutional practice. *See Piotrowski*, 237 F.3d at 578–79.

### 1. HISD's official policy on student searches and "rogue actor" Higgins

Each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional. *Piotrowski*, 237 F.3d at 579–80. The policy Plaintiffs identified in this case states:

> Students are entitled to the guarantees of the Fourth Amendment of the U.S. Constitution, and they are subject to reasonable searches and seizures. School officials are empowered to conduct reasonable searches of students and school property when there is reasonable believe that students may be in possession of drugs, weapons, alcohol, or other materials ('contraband') in violation of school policy or state law.

Doc. 12 at ¶ 10. There can be little doubt that this policy regarding searches and seizures of students is facially constitutional. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) ("[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search."). Nevertheless, "even a facially innocuous policy will support

liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 585 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Brown*, 520 U.S. at 407 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiffs begin their assault on HISD's motion by announcing that the school district cannot absolve itself of liability by arguing that Higgins was a "rogue" actor acting in contravention of official policy. Doc. 17 at 5–8. Plaintiffs allege that the district is liable because Higgins was acting pursuant to official HISD policy when she instituted the searches. *Id.* Specifically, Plaintiffs contend that "when a policymaker does nothing more than promulgate a policy that tracks the law with no explanation of terms such as (1) unreasonable search, (2) reasonable cause, (3) voluntary consent, (4) reasonably related to the circumstances, and (5) excessively intrusive in light of the age, sex, and nature of the infraction, a violation of constitutional rights is a highly predictable consequence where such terms are left open to subjective interpretation." *Id.* at 7.

Plaintiffs' argument misses the mark. Admittedly, certain terms are not precisely defined—though, as mentioned in footnote 1, *supra*, several terms are—and the discretion to conduct searches upon "reasonable cause" is left to HISD employees. As a result, the policy allows for the possibility that a constitutional violation may occur. Nevertheless, this is insufficient to indicate "deliberate indifference" and impose liability on the policymaker. *See Oliver v. Scott*, 276 F.3d 736, 743 (5th Cir. 2002) (concluding that a facially constitutional policy

regulating prison strip, pat-down, and visual searches did not impose municipal liability even though it allowed for the possibility of constitutional violations by lower officers); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1072 (1991), *as recognized in Francis v. Carroll*, 659 F. Supp. 2d 619, 626 (D. Del. 2009) (fact that official has discretion in the exercise of particular functions does not automatically give rise to municipal liability based on exercise of that discretion).

### 2. HISD's alleged "widespread practice" of illegal strip searches

A municipality may also be held liable where a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. "Actual or constructive knowledge of such a custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Id*. In addition to prior knowledge, the municipality must be recurrently faced with situations which are "so similar" to the facts of the instant case to satisfy the awareness requirement. *Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001), *vacated and remanded for reconsideration*, 536 U.S. 953, *aff'd and reinstated*, 323 F.3d 950 (11th Cir. 2003). Moreover, "[i]solated violations, are not the persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal § 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (citing *Berry v. McLemore*, 670 F.2d 30, 32 (5th Cir. 1982). In fact, a customary municipal policy cannot ordinarily be inferred from single constitutional violations. *Webster*, 735 F.2d at 851.

Here, Plaintiffs argue that because there was a widespread practice of search-policy

violations, HISD can be held liable under § 1983. Doc. 17 at 8–9. In support of this argument, Plaintiffs declare, "[t]o date, plaintiff has been able to document [twenty-three] instances of illegal strip searches." *Id.* at 9. Nevertheless, all of the evidence that either party has uncovered to date shows that there were no known problems involving searches in the District *prior* to the incident at issue here. In fact, Plaintiffs specifically state that "it is unknown how many other unconstitutional searches have occurred at HISD schools since the student search policy was instituted fifteen years ago." Doc. 12 at ¶ 29. Moreover, Plaintiffs' bold statement that twenty-three instances of illegal strip searches have been documented is an overstatement. The incident at issue in this case actually encompasses twenty-two of the twenty-three alleged "instances." Plaintiffs describe only one other allegedly illegal strip search, which occurred when a male student was searched in 2013 for a missing iPod. *Id.*; Doc. 17 at 9. Not only did this additional incident occur after the one Plaintiffs complain about, but it is also very dissimilar to the student search in this case. As Defendant points out, "Plaintiffs complain about a classroom-wide search without individualized suspicion, whereas the 2013 search was a suspicion-based search of a single student." Doc. 13 at 11.

When considering both instances, it becomes obvious that such conduct does not amount to the "persistent, often repeated, constant violations" required for § 1983 liability. Nor is one potential violation occurring *after* the incident in question evidence that the HISD board was aware of policies so defective that violations were likely. Instead, Plaintiffs describe isolated violations and, therefore, fail to establish a practice or pattern of constitutional violations that would attach liability to HISD under its student search and seizure policy.

### 3. HISD's alleged failure to train

In general, there are only limited circumstances in which an allegation of a "failure to

train" can be the basis for liability under § 1983. *City of Canton*, 489 U.S. at 387. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. at 389. To demonstrate such deliberate indifference for purposes of failure to train, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.' *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Brown*, 520 U.S. at 410). Justice O'Connor goes even further and explains that "[w]here . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395 (O'Connor, J., concurring). Such "a pattern could evidence not only the existence of a policy but also official deliberate indifference." *Piotrowski*, 237 F.3d at 582. Furthermore, in the absence of previous violations, a plaintiff must show the alleged violation was a "highly predictable consequence" of a failure to train. *Bd. of Cnty. Comm'rs*, 520 U.S. at 398.

      The facts alleged here simply do not suffice to carry the heavy burden that a plaintiff must bear in establishing municipal culpability and causation. Plaintiffs have failed to demonstrate that HISD personnel are recurrently faced with situations so similar to the facts of the instant case that the need for training would be obvious. To be more specific, Plaintiffs did not provide the Court with any prior instances when HISD officials conducted a search of this magnitude before the event of the instant case, nor do they allege there is a pattern of complaints by other citizens. Although the strip searches in this case may have been questionable under the Fourth Amendment, any impropriety of these searches was not a product of HISD's policy, and

Plaintiffs have failed to establish a pattern of unconstitutional behavior that should have led HISD to begin training its employees. Finally, if there were deficiencies in HISD's policies and training, they were not the driving force behind the constitutional violations. *See Thomas*, 261 F.3d at 1176 (holding that the court did not err in declining to compel the District and County to alter their policies because even if there were deficiencies in the District and County's policies and training, they were not the driving force behind the constitutional violations). Hence, the Court cannot conclude that HISD's alleged failure to train its employees amounts to deliberate indifference.

On the facts of this case, there is no support for the argument that HISD had an unconstitutional policy or practice. To the contrary, Plaintiffs' exhibits indicate that HISD's official policy was facially constitutional. Moreover, Plaintiffs fail to allege facts that indicate HISD acted with "deliberate indifference" and the district's custom or policy was the "moving force" behind the student strip searches. Accordingly, the Court dismisses Plaintiffs' § 1983 claims.

  **B.**  **Tex. Const. Art. I, § 9**

Texas "does not recognize a common law cause of action for damages to enforce constitutional rights," but "suits for equitable remedies for violation of constitutional rights are not prohibited." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149–150 (Tex. 1995). Under Fed. R. Civ. P. 65(d), "[e]very order granting an injunction and every restraining order must . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." In other words, "[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (citing *Int'l Longshoremen's Ass'n v. Phila. Marine*

*Trade Ass'n*, 389 U.S. 64, 76 (1967).

Here, Plaintiffs seek injunctive relief in the form of an order from the Court prohibiting the use of strip searches of students at HISD schools unless and until:

(1) The Student Search Policy is clearly defined; including who can be searched, under what circumstances a student can be subjected to a search, what can be searched for, when a search is reasonable, and the procedures for implementing said search;
(2) A procedure for implementing a search of a student's person is clearly documented, including but not limited to proper ways to obtain consent, who is to be notified that a search is occurring; and
(3) HISD implements a training program for all employees so that student's Constitutional Rights are protected

Doc. 12 at ¶ 36. Plaintiffs have not alleged facts for which injunctive relief would be proper. As described in the previous section, Plaintiffs fail to allege sufficient facts to indicate that HISD's policy or deficient training of its employees was the "moving force" behind the constitutional violations. Moreover, the policy itself is on its face constitutional. Accordingly, an injunction to alter HISD policies or procedures with regards to student searches and seizures, or to implement employee training programs would be inappropriate. *See Thomas*, 261 F.3d at 1176 (concluding district court was correct to decline injunctive relief when neither school policies nor training were the driving force behind constitutional violations). In addition, what Plaintiffs appear to be asking for is an "obey-the-law" injunction. Such an injunction has been held as invalid under Fed. R. Civ. P. 65(d). *Meyer*, 661 F.2d at 373 ("A general injunction which in essence orders a defendant to obey the law is not permitted."). Here, an "obey-the-law" injunction would apply to future student searches conducted by HISD. Such an order, however, would be too vague and not specific enough to give a reasonable person notice as to what sort of behavior would violate the injunction. *N.L.R.B. v. Express Publ'g Co.*, 312 U.S. 426, 435–36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an

injunction broadly to obey the statute . . . .”). Accordingly, the Court likewise dismisses Plaintiffs' Article I claims.

### C. Amendment

Under Fed. R. Civ. P. 15(a), a plaintiff is allowed to amend his pleadings only once as a matter of course. In this case, Plaintiffs again fail to state a claim for relief under § 1983 or request any proper injunctive relief despite already being granted one opportunity to cure their pleading deficiencies. Furthermore, the Court is unconvinced that Plaintiffs can state a viable claim for relief even if given the opportunity to re-plead yet again. The Court has discretion to deny leave to amend if it determines that additional leave to amend, after having already granted a leave to amend the original complaint, would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). As a result, the Court grants Defendant's Motion to Dismiss and denies Plaintiffs' request for leave to amend.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc.13) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

SIGNED at Houston, Texas, this 30th day of September, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE